Robert Tauler (SBN 241964)
Matthew J. Smith (SBN 240353)
Tauler Smith LLP
8605 Santa Monica Boulevard, #86963
Los Angeles, California 90069-4109
Tel: (310) 590-3927
rtauler@taulersmith.com

Attorneys for Plaintiff
NUTRITION DISTRIBUTION LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>APOGEE PEPTIDES, LLC, a Florida Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. '17CV584 BTM JMA<br><br>**COMPLAINT FOR FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT § 42 (a)(1)(B)**<br><br>**DEMAND FOR A JURY TRIAL** |

Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff"), by and through its undersigned attorneys, submits this Complaint against defendant Apogee Peptides, LLC ("Apogee" or "Defendant"), and in support thereof, avers as follows:

## INTRODUCTION

1. This is a civil action arising out of Defendant's false and misleading advertising and statements in connection with its various purported "research chemicals," including but not limited to, numerous well-known prescription-only drugs, Selective Androgen Receptor Modulators" ("SARMs") and peptides (collectively, the "Research Chemicals"). Defendant has falsely represented to consumers that the "Research Chemicals" are "not for human consumption" and "for laboratory research only," among other representations. Contrary to these purported "disclaimers," Defendant clearly markets and advertises its products for personal use and consumption.

2. For example and without limitation, Defendants' so-called "Research Chemicals" include several popular prescription-only drugs, including Sildenafil Citrate (the generic form of Viagra) and Tadalafil (the generic form of Cialis). Despite the fact that these drugs are only legally available with a prescription from a physician, Apogee offers these prescription-only drugs for sale to consumers (without the required prescription) and mislabeled as "not for human consumption" and "for laboratory research only."

3. In addition, Defendant advertises and offers for sale various potentially harmful products (such as SARMs and peptides) without any information about the known risks and serious health consequences from their use. For example, Defendant markets and sells various SARMs, which are synthetic drugs with similar effects to illegal anabolic steroids. SARMs, however, may pose significant health and safety risks to consumers. Indeed, medical experts have opined that products containing SARMs "have ***many recognized potential serious side effects***, including hepatoxicity (liver damage), and markedly lower plasma HDL cholesterol (raising the risk of heart

disease)," and may have even more serious consequences that are currently unknown. Thus, medical experts have concluded that the sale of products containing SARMs, like Defendant's "Research Chemicals," is "***highly dangerous to public safety***."

4. Defendant also fails to disclose that SARMs are specifically prohibited for use in sporting events by the World Anti-Doping Agency and the U.S. Anti-Doping Agency, despite the fact that Defendant markets its products to bodybuilders, competitive athletes, and other consumers seeking to improve their physical performance and physiques.

5. Defendant also markets and sells various peptides, which cannot be dispensed for human use without a prescription from a licensed medical practitioner due to their toxicity and potentially harmful effects. Again, Apogee advertises and mislabels these products as "not for human consumption" and "for laboratory research only," but clearly markets its "research chemicals" to consumers for personal use.

6. For example, Apogee maintains a blog on its website which discusses the beneficial effects of peptide use in adults and children. Among other things, Apogee claims that "Ipamorelin is part of the third generation of peptides and it is showing profound promise to aid in the prevention and cure of some very scary and life-changing disorders." Apogee also claims that this peptide is "ideal" for children who produce too little growth hormone and are experiencing stunted bone growth "[b]ecause Ipamorelin affects the pituitary Growth Hormone levels and has few, if any adverse side effects, it is ideal for this type of an application." Apogee further represents that "Ipamorelin also showed a marked increase in body weight gain. For those children and adults that suffer from metabolic disorders that prevent them of achieving healthy body weight, this might be a powerful therapy that will not also cause large scale side effects."

7. This action seeks to enjoin Defendant from the marketing and sale of its various "Research Chemicals," as Defendant is illegally and falsely marketing such products in violation of the Lanham Act.

8. Defendant's false, misleading, illegal and deceptive practices have unjustly enriched Defendant at the expense of Plaintiff, and have caused Plaintiff extensive and irreparable harm, including, but not limited to, loss of revenue, disparagement, and loss of goodwill.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

10. This Court has personal jurisdiction over Apogee because Defendant has, directly or through its intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold, and advertised its nutritional supplement products in the United States, the State of California, and this district, including but not limited to, the Research Chemicals. Defendant has purposefully and voluntarily placed these products into the stream of commerce with the expectation that they will be purchased in this district.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district. *Allstar Marketing Group, LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## PARTIES

12. Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff") is an Arizona limited liability company with its principal place of business at 14215 N. 8th Pl., Phoenix, Arizona, 85022.

13. Defendant Apogee Peptides, LLC ("Apogee" or "Defendant") is a Florida limited liability company that lists 1521 Alton Road, Suite 79, Miami Beach, Florida 33139 as its principal business address.

14. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1- 10, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## FACTUAL ALLEGATIONS

15. The nutritional supplement industry is one of the fastest growing and most lucrative in the United States. A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years. The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for unfair competition prohibited by the Lanham Act and other illegal activity.

### Plaintiff Nutrition Distribution & "Mass FX Black"

16. Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for bodybuilding.

17. Plaintiff has several categories of bodybuilding products, including pre-workouts, muscle-gainers, fat burners, and male performance enhancement.

18. Around 2011, Plaintiff began developing a new product in the muscle-gainer sub-market of the nutritional supplement world.

19. After devoting its resources for over a year on product development and testing, Plaintiff introduced "Mass FX Black" in April 2013.

20. In addition to "Mass FX Black," Plaintiff has introduced numerous natural nutritional supplements that directly compete with Defendant's "Research Chemicals," including but not limited to, "Advanced PCT," "Ultra Reps," "Stacked BCAA," "SuperSize," "Gym Juice," and "German Creatine."

**Defendant Apogee And Its Purported "Research Chemicals"**

21. Defendant Apogee is a competing supplement company in Florida.

22. Apogee is engaged in false and misleading advertising with respect to its various purported "Research Chemicals." As evidenced by Apogee's representations on its website and labeling, these "Research Chemicals" are unlawfully marketed and misbranded as "not for human consumption" and "for laboratory research only," among other representations. Contrary to these purported "disclaimers," Defendant clearly advertises and offers for sale its products for personal use and consumption.

23. For example, Defendants' so-called "Research Chemicals" include several popular prescription-only drugs, including Sildenafil Citrate (the generic form of Viagra) and Tadalafil (the generic form of Cialis). Despite the fact that these drugs are only legally available with a prescription from a physician, Apogee offers these prescription-only drugs for sale to consumers (without the required prescription) and mislabeled as "not for human consumption" and "for laboratory research only."

24. In addition, Defendant advertises and offers for sale various potentially harmful products, such as SARMs and peptides. SARMs are synthetic drugs with similar effects to illegal anabolic steroids. However, SARMs may pose significant health and safety risks to consumers. Indeed, medical experts have opined that products containing SARMs "have ***many recognized potential serious side effects***, including hepatoxicity (liver damage), and markedly lower plasma HDL cholesterol (raising the risk of heart disease)," and may have even more serious consequences that are currently unknown. Thus, medical experts have concluded that the sale of products containing SARMs, like Defendant's "Research Chemicals," is "***highly dangerous to public safety***."

25. Defendant also fails to disclose that SARMs are specifically prohibited for use in sporting events by the World Anti-Doping Agency and the U.S. Anti-Doping Agency, despite the fact that Defendant markets its products to bodybuilders, competitive athletes, and other consumers seeking to improve their physical performance and physiques.

26. Similarly, peptides cannot be dispensed for human use without a prescription from a licensed medical practitioner due to their toxicity and potentially harmful effects. Again, Apogee advertises and offers for sale these products as "not for human consumption" and "for laboratory research only," but clearly markets and advertises its "research chemicals" to consumers for personal use.

27. For example, Apogee maintains a blog on its website which discusses the beneficial effects of peptide use in adults and children. Among other things, Apogee claims that "Ipamorelin is part of the third generation of peptides and it is showing profound promise to aid in the prevention and cure of some very scary and life-changing disorders." Apogee also claims that this peptide is "ideal" for children who produce too little growth hormone and are experiencing stunted bone growth "[b]ecause Ipamorelin affects the pituitary Growth Hormone levels and has few, if any adverse side effects, it is ideal for this type of an application." Apogee further represents that "Ipamorelin also showed a marked increase in body weight gain. For those children and adults that suffer from metabolic disorders that prevent them of achieving healthy body weight, this might be a powerful therapy that will not also cause large scale side effects."

28. Although Defendant has labeled its products as "research chemicals" that are purportedly "not for human consumption" and "for laboratory research only," Defendant's "disclaimers" are patently false and misleading. Indeed, it is clear from the type of marketing employed, the type of chemicals sold on Apogee's website, and the lack of specification as to the type of "research" consumers of these products (such as bodybuilders and other competitive athletes) would be conducting, that, in reality, the

aforementioned false and misleading statements are a pretense to elude the authorities and to avoid FDA scrutiny.

29. Defendant's false and misleading advertising is harmful to the marketplace for dietary and natural nutritional supplements, including Plaintiff's products, and potentially to individual consumers. Defendant has created an illegitimate marketplace of young bodybuilders who will gain muscle "at all costs," but who are not informed of the dangers of Defendant's products. Indeed, users of Apogee's "Research Chemicals" have little incentive to use Plaintiff's natural nutritional supplements until they are hurt or the "Research Chemicals" are taken off the market.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)

30. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

31. Apogee is engaged in false and misleading advertising with respect to its various purported "Research Chemicals." As evidenced by Apogee's representations on its website and labeling, these "Research Chemicals" are unlawfully marketed and misbranded as "not for human consumption" and "for laboratory research only," among other representations. Contrary to these purported "disclaimers," Defendant clearly advertises and offers for sale its products for personal use and consumption.

32. For example, Defendants' so-called "Research Chemicals" include several popular prescription-only drugs, including Sildenafil Citrate (the generic form of Viagra) and Tadalafil (the generic form of Cialis). Despite the fact that these drugs are only legally available with a prescription from a physician, Apogee offers these prescription-only drugs for sale to consumers (without the required prescription) and mislabeled as "not for human consumption" and "for laboratory research only."

33. In addition, Defendant advertises and offers for sale various potentially harmful products, such as SARMs and peptides. SARMs are synthetic drugs with similar

effects to illegal anabolic steroids. However, SARMs may pose significant health and safety risks to consumers. Indeed, medical experts have opined that products containing SARMs "have ***many recognized potential serious side effects***, including hepatoxicity (liver damage), and markedly lower plasma HDL cholesterol (raising the risk of heart disease)," and may have even more serious consequences that are currently unknown. Thus, medical experts have concluded that the sale of products containing SARMs, like Defendant's "Research Chemicals," is "***highly dangerous to public safety***."

34. Defendant also fails to disclose that SARMs are specifically prohibited for use in sporting events by the World Anti-Doping Agency and the U.S. Anti-Doping Agency, despite the fact that Defendant markets its products to bodybuilders, competitive athletes, and other consumers seeking to improve their physical performance and physiques.

35. Similarly, peptides cannot be dispensed for human use without a prescription from a licensed medical practitioner due to their toxicity and potentially harmful effects. Again, Apogee advertises and offers for sale these products as "not for human consumption" and "for laboratory research only," but clearly markets and advertises its "research chemicals" to consumers for personal use.

36. For example, Apogee maintains a blog on its website which discusses the beneficial effects of peptide use in adults and children. Among other things, Apogee claims that "Ipamorelin is part of the third generation of peptides and it is showing profound promise to aid in the prevention and cure of some very scary and life-changing disorders." Apogee also claims that this peptide is "ideal" for children who produce too little growth hormone and are experiencing stunted bone growth "[b]ecause Ipamorelin affects the pituitary Growth Hormone levels and has few, if any adverse side effects, it is ideal for this type of an application." Apogee further represents that "Ipamorelin also showed a marked increase in body weight gain. For those children and adults that suffer from metabolic disorders that prevent them of achieving healthy body weight, this might be a powerful therapy that will not also cause large scale side effects."

37. Although Defendant has labeled its products as "research chemicals" that are purportedly "not for human consumption" and "for laboratory research only," Defendant's "disclaimers" are patently false and misleading. Indeed, it is clear from the type of marketing employed, the type of chemicals sold on Apogee's website, and the lack of specification as to the type of "research" consumers of these products (such as bodybuilders and other competitive athletes) would be conducting, that, in reality, the aforementioned false and misleading statements are a pretense to elude the authorities and to avoid FDA scrutiny.

38. Defendant's use of falsely marketed substances has the tendency to deceive a substantial segment of the public and consumers, including those in California and in this district, into believing that they are purchasing a product with different characteristics.

39. The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is unaware of the serious risks of using these purported "Research Chemicals," and/or steroids or illegal substances.

40. Defendant has introduced its false and misleading statements into interstate commerce via marketing and advertising on various websites and shipment of its products into interstate commerce containing false and misleading advertising.

41. Apogee's "Research Products" directly compete with Plaintiff's products, including but not limited to, its bodybuilding supplement "Mass FX," as well as its various other natural nutritional supplements, "Advanced PCT," "Ultra Reps," "Stacked BCAA," "SuperSize," "Gym Juice," and "German Creatine."

42. Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Apogee and the loss of goodwill in Plaintiff's products. Indeed, Apogee's conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

43. Defendant's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce that, in commercial advertising

and promotion, misrepresent the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act.

**PRAYER**

44. Wherefore, Plaintiff Nutrition Distribution LLC prays for judgment against Defendant Apogee Peptides, LLC as follows:

45. For preliminary and permanent injunctive relief enjoining Defendant from producing, licensing, marketing, and selling its various purported "research chemicals," including but not limited to, ALT-711, Clenbuterol, Anastrazole, Avanafil, Clomiphene, Dapoxetine, Dutasteride, Exemestane, Finasteride, GW-501516, Ketotifen, Letrozole, LGD-4033, MK-2866, MK-677, Noopept, Pramipexole, Raloxifene, S4, Sildenafil, Silymarin, T3, T4, Tadalafil, Tamoxifen, Toremifene, Vardenafil, Yohimbine, CJC-1295, AICAR, BPC-157, Epithalon, GHRP-2, GNRH, Hexarelin, IGF1-LR3, Ipamorelin, Melanotan, MGF, Oxytocin, PEG-MGF, DSIP, PT-141, and Sermorelin;

46. For an award of compensatory damages to be proven at trial in accordance with 15 U.S.C. § 1117;

47. For an award of any and all of Defendant's profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117 and other applicable laws;

48. For restitution of Defendant's ill-gotten gains;

49. For treble damages in accordance with 15 U.S.C. § 1117;

50. For punitive damages;

51. For costs and attorneys' fees; and

52. Any other relief the Court may deem appropriate.

DATED: March 23, 2017 TAULER SMITH LLP

By: ___*/s/ Robert Tauler* ________________
Robert Tauler
NUTRITION DISTRIBUTION LLC

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: March 23, 2017 TAULER SMITH LLP

By: ___*/s/ Robert Tauler* ________________
Robert Tauler
NUTRITION DISTRIBUTION LLC